The last case for argument today is 24-1952, Walmart Apollo v. BJ's Wholesale. Ms. Swizzy, please proceed when you're ready. Thank you, Your Honor. Good morning. May it please the Court. The Board erred in finding Claims 17 and 1-14 unpatentable, starting with Claim 17, which is the Fletchell-Cason combination. When we look at how this ground played out, the error is clear, and there are five key takeaways I would like to emphasize this morning. Five's a lot. I'll go through them quickly, Your Honor. One, BJ's petition used Cason for one step. It admits this. Two, our expert in his declaration pointed out that BJ's didn't provide a motivation to combine that. Is this Dr. Shamos? Our expert is Dr. Williams, Your Honor. Dr. Williams. Okay, I'm just trying to keep them straight. Sure. Pointed out that BJ's had a gap in its proof because it didn't explain why a person of ordinary skill in the art would have been motivated to combine that step from Cason into Fletchell, its other reference. Third, BJ's did not come back with a rebuttal declaration from an expert, Dr. Shamos or otherwise. Fourth, despite this record, the Board found the claim obvious, but it did so in really three short paragraphs that I'd like to get through. And fifth, importantly, it did not address Dr. Williams' testimony, the testimony of our expert. So going back through those. The Board found there was a reason to combine Cason and Fletchell to avoid duplication. Your Honor, I believe you're referring to the paragraph at the top of 52. And so that really, 50 to 52 is where the Board made its findings on this combination. And what it's saying there is really using hindsight. There's no analysis, and this traces back to BJ's failure and the failure of its expert, because there's no analysis other than hindsight, other than looking at Claim 17 and using that as a roadmap. So there's a benefit to not having duplicate orders, but the question is why? Putting ourselves back in the time period of the ordinary artisan who doesn't have the 435 patent in hand, why would that artisan look to Cason? And it's a very different system of seeing if there's a cart that exists on a single user's mobile phone. So do they already have a shopping cart open or not? It's a very binary, simple calculation that happens on the mobile phone. In Fletchell, it is a server-side system, and BJ's is trying to combine these two different references. So it hasn't explained why anybody would look to Cason for that step and combine it with Fletchell. And particularly, and this is just as important in the obviousness inquiry, BJ's and the Board, excuse me, BJ's and the Board did not explain why in the manner claimed, right, because that's what the obviousness analysis is trying to get at without using hindsight. And Claim 17 has a very specific way of processing orders from customers. We have a system which is really sort of moving things in and out of a dormant versus active state using these virtual terminal sales applications. There are a few of those. There are a ton of customers. That right there is one big difference between Cason and Fletchell. Cason's just talking about my single phone, I'm the shopper, do I have a cart? But our system is using economies of scale and resource management to say if a customer has something going on, we're going to bump them out of the dormant state into an active state. That's what Claim 17 is saying when you have to check to see is there an instance of the order, if not, on a VTSA, if not, include the state of that order. I'm now adding something to my cart. So that is in Claim 17. It's shown in Figure 19 at Appendix 207, and it's described in the patent at Columns 13, 14, and 16. And so in hindsight, we can all see what might be beneficial, but BJs never explain why someone at the get-go would have even thought to use Cason on the mobile device side with Fletchell in the manner claimed. And the board's other reasons are just as conclusory and hindsight-based. So it actually, at the top of Appendix 51, identifies the problem. It recognizes that Cason teaches performing those actions on a mobile device, not on a server. That's great. It identified the problem. But the rest of its analysis in its second and third paragraphs don't explain why, and again, this is BJ's failure. And you'll see at our expert testimony at Appendix 3878 to 3880, he specifically calls BJs out on not paying attention to these different references and not offering a motivation. And again, BJs never came back with expert testimony in response, and the board just paraphrased and copied BJ's conclusory, hindsight-driven analysis. That's not a viable theory. It's very similar to this Court's decision in Vertec, and for that reason the decision on Claim 17 cannot stand. And a telltale sign of the board not having gone through the proper analysis and actually not being given the information and the evidence from BJs is that on appeal, BJs pivots to arguing that there's somehow a distinction between our, quote, simple technology and, quote, complex technology. That is not in the record. It was not in the petition. It is not a finding by the board. And I think that really demonstrates that BJs did not carry its burden, starting with its petition and lacking expert testimony, not even contending with our expert testimony in its reply at Appendix 830 to 831. And it's shifting to some characterization that just doesn't apply. Claim 17 is obviously a complex situation, but that's not really relevant because that wasn't argued below and wasn't adopted by the board. I'm happy to turn to Claims 1 through 14 briefly, and I know there are essentially three issues here, but I think I can get through them pretty quickly. So Claims 1 through 14 have some similar issues in that there's no rebuttal declaration from BJs. But the key points I would focus the court on here is really expert agreement. Both experts agree, and this is talking about Yong and whether Yong servers would be combined. Both experts agree that Yong has a certain type of payment server, which is the Visas and MasterCards of the world, that exists separately and outside for very good reason from a merchant server. And you'll see that from our expert at Appendix 3845 to 3855. If we agree with you on this argument, we then have to reach the 1.57d argument as well, correct? Yes, Your Honor. That would be one of the other issues. Can I ask you to pivot to that then? Absolutely. So what the question is here is can we rely on a provisional application that has been made publicly available by the patent office as a proper incorporation by reference? And under Section 112, which this Court's case law is very clear that Section 112 doesn't require any particular form of disclosure, the PTO's rule, if it is read as BJs and the Board propose, really bumps right into judicial precedent and statute. And, of course, a PTO rule cannot do that. There's some arguments about are we talking about form versus substance. Here we're talking about written description and the taking away of a certain type of form of written description is substance. These collapse together. They are one and the same. And so the PTO does not have authority to dictate how an applicant can incorporate by reference. We see going back to the D.C. Circuit case in General Electric, it makes very good sense to allow incorporation by reference. Nobody's disputing that incorporation by reference cannot be done. The question is really can this provisional that is publicly available and was made publicly available years before the applicants applied for the 435 patent, is that fair game? And it is. It's just like any other patent document that is readily available at the patent office. Documents at the patent office are sort of quintessentially publicly available. So either the rule should and can be fairly read, we think, to interpret U.S. patent application publication to include published provisionals, or if for some reason that's not the reading the court adopts, then the rule cannot stand in light of judicial precedent and the statute itself. And then just to tie up very briefly, there's one other issue on Claims 1-14, which is the written description. The board here just really overcomplicated it. We have written description support in the provisional at paragraph 60, which is at 10842-43, which talks about receipt identification, which is the term used in Claims 1-14. And we have the provisional at Claims 20, which follows from Claim 17, of using a scanner to scan receipt identification information, which is a type of receipt information. So it's all there. It's actually all tied together in Claim 20. There's no way to read the patent, the provisional, excuse me, as not disclosing the Claims 1-14, the patent of using a scanning device to verify completion of an order. That's what a receipt is by definition. There's really no dispute on that. So this really boils down to simple disclosures in the patent itself. Excuse me, I keep saying that wrong, in the provisional itself. I see I'm into my rebuttal. I'm happy to reserve the remainder. Okay, that sounds great.  Thank you, Honor. May I please the Court? I'm Michael Messinger, representing Appellee BJ's Wholesale Club Holdings. The Board got it right in all three of the Interparty Review Proceedings below, back with substantial evidence. This Court should affirm, and there's no need to remand, the Board properly for the 1-528 proceeding involving Claim 17. The Board properly identified a motivation to combine with full consideration of the expert testimony. Walmart's being myopic in how it's looking at the Board's opinion. The Board squarely talks about the motivation. The Board squarely talks about and found that a person of ordinary skill in the art would have recognized this benefit that before you create a new order, you check to see if there's already an existing one, and this avoids duplicate orders for the same customer. That was in our original testimony by Chalmers. The Board relied on it and highlighted it, as counsel noted, in its opinion. It's not conclusionary. It's a benefit that would have been recognized by a person of ordinary skill in the art. And with respect to overlooking its expert testimony, Williams, the Board explains that it builds its analysis because Claim 17 depends from Claim 15, and the Board explains that it builds its discussion of Williams' testimony with respect to the independent Claim 15, where it has extensive specific references to Williams' testimony. It even has references to aspects of Williams' server-side testimony that it found less credible. That's at Appendix 41. And then for the specific step of 17, Williams only adds two paragraphs of testimony, and that is testimony about case in step being on a mobile device, not a server. But this subject matter was directly addressed by the Board in its opinion. It has sites and quotes throughout pages. It has sites and quotes throughout its opinion that mirror the patent owner response and the text in the patent owner response is nearly verbatim with Dr. Williams' testimony. So looking at the totality, it's clear that the Board is considering fully the expert testimony of Williams. What about Claims 1 to 14 and combining functionality of Young's disparate services into a single server? Yes, Your Honor. With respect to the 1563, where it has the combining the servers, the Board explained that Young itself teaches it, Shamos' expert testimony and KSR support, this modification of Young. So this is not combining references. This is just a modification of Young so that the functions are running on the same server, not multiple servers. And Young itself taught different combinations, and the Board pointed to it. It teaches that different variations of components can be used on the server side, and that's with Appendix 109 of the Board's opinion. And Dr. Shamos testified. His testimony shows that a person of varying skill in the art would understand that the functions can be run on the same server. It would produce a logical variation of the multiple servers. We agree with you that we don't have to deal with the question of incorporating a provisional. Correct, Your Honor. You don't have to. And you don't have to for two reasons. One is what we just talked about with respect to the 1563 Young proceeding, but also in the 1564 proceeding, counsel said that it's not all there, but it is all there. The Board explained quite clearly why that provisional application, as a matter of factual finding, does not support Claim 1's optical scanning to confirm payment of an order. In fact, as the Board correctly noted, when you look at the Claims 19 and 20, they only describe machine-readable representation of receipt identification information. And this is like a label that identifies a receipt. And the explicit text of Claim 20 says it identifies a receipt. Nowhere does it describe optically scanning to confirm completion of payment for an order. And also the how is missing. Nowhere does the 908 provisional describe optically scanning to confirm payment by an optical scanning machine that's in communication with a server. So this court could affirm the Board on that and not have to reach the legal issues with respect to 157D and whether or not you could incorporate that reference. And Walmart also pointed to a couple of references in the specification. These are very isolated references, and they also don't show any adequate written description support. For example, Walmart points to machine-readable representation 460, and that's a representation of the order. And in the context of the 435 patent, that's the order that's presented at a point-of-sale terminal for purposes of payment. It's not a post-payment receipt check step, as Walmart's arguing. It doesn't provide any further adequate written description support. And similarly, Walmart points to a scanning machine that's also at the point-of-sale terminal. That also doesn't indicate how someone would optically scan to confirm payment of a pleaded order. And as the Board correctly identified, to leap from Claim 20's machine-readable representation of receipt identification information apologies as long, it's just speculation that Walmart's knitting together. Any questions, Your Honor? I'll just make one comment on the credit card processing argument that counsel noted. In particular, they pointed to the fact that William's testimony indicated that a payment server with credit card processing would not be combined. The Board looked squarely at that issue, and Claim 1's not even limited to the credit card payment. 435 patent itself shows that other types of payment could be used, and Dr. Shamos' testimony indicated that all young servers could be owned by the same merchant. And basically, the Board correctly looked at the technological considerations and said even if it's a suboptimal design because of credit card payment processing, it would be obvious to combine the functions on the server. And counsel also mentioned a couple of times that we didn't present a rebuttal declaration for Shamos. However, for William's testimony, however, in these cases there was no need to present a rebuttal. With respect to the 1528 case on the benefit and motivation to combine, it was Walmart that didn't rebut our testimony about the benefit would have been recognized by a person of ordinary skill in the art, and there was no need to present a rebuttal for that. And similarly, with respect to the functions being combined on the same server, and respect to the lack of adequate written description, there was no need to present a rebuttal declaration because we had already indicated in our original declaration by Shamos that there was no adequate written description for this Board. Any questions? I mean, 15 and 19 are not argued except for 17, right? I'm sorry, what about 17? 17 is obviously argued, but 15 and 19 otherwise are not. Yes, those are conceded. Okay, should we hear from Ms. West? Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. Shella Winn for the Director of the USPTO. And the statute under 122 expressly says an application is not published, right? Correct, Your Honor. Provisional applications are not published. USPTO regulations consistently define published applications as an application for patent which has been published under 122B, and the exception to 122B is a provisional application. But we don't even reach this issue if we agree on the earlier point, right? Correct, Your Honor. I'm happy to answer any questions the Court has. It was publicly accessible, yes, Your Honor. But again, the rule is, Section 112, as appellant argues, the rule is not in conflict with that statute. The statute is silent as to the form of disclosure. By issuing this rule, the PTO is not changing the written discretion standard. It's a procedural rule. The USPTO is within its rulemaking authority to issue it. But that would be up for this Court to decide. If, Your Honors, in light of recent Supreme Court cases, what 112 means is what we say it means rather than referring to what you set out, right? We've not asked for any kind of deference in this case, Your Honor. We think the statute is clear. We think the regulation is clear. And you don't need to reach whether there's a conflict with Section 112. Thank you, Your Honors, for your time. Thank you, Ms. Smith. Thank you, Your Honors. Starting with Claim 17, of course it's not our burden. On the benefit issue, I would point the Court to the vertex statements, which I think are highly relevant here. It is not sufficient, for instance, that disclosures are known or pieces of a combination are known. Inventions are all about taking pre-existing elements and combining them in a novel way. So as vertex says, where disclosures do not provide any reason why a person of ordinary skill in the art would do X instead of Y. Why would a person of ordinary skill in the art take the step from caisson that's very simple and translate it, relocate it, refashion it into the particular steps that Claim 17 require to be happening on the server with this interaction between dormant states and moving into a VTSA to process each time a customer does something with their cart. There is just nothing in the record to support this. And again, this goes back to BJ's failure. And that's why BJ's not submitting a rebuttal expert declaration is very relevant, because the only testimony here is from Dr. Williams. It is a sideshow to talk about the board's brief mention of Dr. Williams and Claim 17 does not depend from Claim 16. This was a reference by BJ's counsel at Appendix 41. And ironically there, the reason the board didn't like that testimony is because it said that Dr. Williams had overlooked something. Well, that is exactly what BJ's and the board are doing here, both overlooking an element that BJ's needs to carry, protecting against hindsight, and seeing if there would have been a motivation to do what the inventors did here in drafting and coming up with an arrangement as Claim 17 recites. So they overlooked their burden and the board overlooked our expert testimony and arguments. Briefly, if there's nothing more to say, I just want to say that Claim 17 recites are hardly isolated and it doesn't require a leaf because it's all in Claim 20 of the provisional. That's Appendix 10852, specifically talking about receipts, receipt identification information, and that they are scannable. That is what Claims 1 through 14 are doing to confirm completion of payment. That's what Claims 1 through 14 recite and what's disclosed in the provisional. And in respect, Your Honor, to Rule 1.57d and Section 122, it may be true that provisionals are not published in the same way or subject to the same rules as non-provisional applications, but the PTO has a Rule 37 CFR 1.14 that's discussed in the briefs that says when the non-provisional becomes public after that 18-month period, what it claims is the benefits of become available to the public on the PTO website. I can type in the 908 provisional and easily get it. So that is publicly available. That's what this Court says is the touchstone for a person of ordinary skill in the art of being able to understand what we disclose and fairly incorporate by reference. And the Riggs decision from this Court recently, which we cited in our reply brief, specifically talks about published provisional applications. That's exactly what we have here. So is your view that anything that's published is available for incorporation by reference? Not that broadly, Your Honor. Certainly in our situation where something is published on the PTO website is now able to be incorporated by reference. That's your understanding of the law? No, thank you for clarifying. It's not that broad. What we have here and I think is all that the Court needs to reach is that when an application for a patent is applied for as here in 2019 and prior to that and certainly prior to issuance, the documents it relies on for priority are publicly available because they've been made available in the Patent Office and it's in that chain. I'm not asking you to reach questions about prior art that somehow might be in some patent file, but in the chain of family history of this patent application and it specifically relies on the provisional and that provisional has been made publicly available by an interim member of the family, that squarely fits. It's noted on the face of the patent where we disclose the family history and it's easy to access for any person of ordinary skill in the art and really any member of the public. You would agree we needn't get to that if we affirm the board otherwise from 1 to 14 prior art. That's true, Your Honor. We certainly hope you get to it on both grounds. Okay, thank you counsel. Thank you, Your Honor.